United States District Court
Southern District of Texas
**ENTERED**
June 05, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TRICIA PAPESH, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, § § § |  |
| *Plaintiff*, § |  |
| § |  |
| vs. § | CIVIL ACTION NO. H-15-3195 |
| § |  |
| MOVE IT MANAGEMENT, L.L.C., *et al.*, § |  |
| *Defendants*. § |  |

## SUMMARY JUDGMENT OPINION AND ORDER

This Fair Labor Standards Act (FLSA) case is before the court on defendants' motion for summary judgment (Dkt. 21). Having considered the parties' submissions, the law, and arguments at a hearing on the record in open court on May 23, 2017, it is ordered that defendants' motion is denied.[1]

**Background**

The following facts are undisputed unless otherwise noted. Tricia Papesh was hired on May 23, 2012 by Watson & Taylor Management, Inc. to manage a self-storage facility in Webster, Texas. At that time she was paid $12.00 per hour. Watson & Taylor transferred its employees to Move It Management, LLC (MIM) in April, 2013. Papesh remained employed as the manager of the same self-storage facility, and her pay was increased to $14.00 per hour. Throughout her employment Papesh was

---

[1] The parties have consented to the jurisdiction of this magistrate judge over all aspects of this case, including final judgment (Dkt. 15).

required to enter her time through a computer timekeeping program managed by a professional employment organization.[2] On several occasions, Papesh requested corrections to her time sheets after submission. From January 2013 through April 2015, she was paid for approximately 720 overtime hours. She was terminated on May 22, 2015.

Watson & Taylor's and MIM's timekeeping and overtime policies were set forth in employee handbooks. MIM's 2015 employee handbook contains the following provision:

> **Prohibited 'Off the Clock' Work**
> At not time should employees perform work while 'off the clock.' All time spent working should be properly recorded. If given a directive to perform work 'off the clock,' please promptly notify your corporate supervisor, or if your corporate supervisor has given a directive to work 'off the clock' and/or has told you not to properly record all hours worked, notify your Insperity human resource specialist. No employee will be penalized in any way for making such a complaint.[3]

---

[2] In May 2012, the time-keeping function was handled by Human Resources Technologies, Inc. d/b/a Odyssey HR. Watson & Taylor switched to Orchestrate H/R, Inc. shortly after Papesh was hired. When Watson & Taylor transferred employees to MIM, the timekeeping function was managed by Insperity, Inc.

[3] D.Ex.B14 (Dkt. 21-4 at 152).

Defendants move for summary judgment on the grounds that Papesh cannot prove MIM was aware that she worked any unpaid overtime hours,[4] and that MS Sub Clear Lake, L.L.C. was not her employer.

**Summary Judgment Standards**

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).

If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc.*

---

[4] Defendants also argue that Papesh was paid the required minimum wage for all hours she worked. Papesh did not address this issue in her response or at the hearing. To the extent the complaint alleges a minimum wage claim, Papesh has abandoned it and it is dismissed with prejudice.

*v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)); *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). If the evidence presented to rebut the summary judgment is not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255; *Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002).

**Analysis**

The FLSA is a remedial statute that requires employers to pay non-exempt employees overtime at an hourly rate "not less than one and one-half time the regular rate at which he is employed." 29 U.S.C. § 207(a). Papesh bears the burden of proving that defendants did not pay her all the overtime pay she was entitled to receive. *See Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001). Papesh also bears the burden of proving that defendant MS Sub Clear Lake, L.L.C. was her employer. *Id.*; *Martinez-Mendoza v. Champion Intern. Corp.*, 340 F.3d 1200, 1209 (11th Cir. 2003).

A. **Papesh's overtime claim**

Papesh claims that she was forced to work overtime "off the clock." MIM has produced pay records for every day of Papesh's employment. Papesh does not dispute

4

that those records reflect the hours she actually reported. When an employer keeps accurate pay records, it is plaintiff's burden to prove "the employer knew or had reason to believe that the reported information was inaccurate." *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972). Where an employee fails to notify her employer or prevents her employer from discovering that she is working overtime, the employer's failure to pay for overtime hours is not a violation of the FLSA. *Newton v. City of Henderson*, 47 F.3d 746, 747 (5th Cir. 1995).

As reflected in her timesheets,[5] Papesh's regular hours were roughly 8:00 a.m. until 6:00 p.m. Monday through Friday and 9:00 a.m. until 2:00 p.m. Saturday. However, it is undisputed that the storage-facility, which included a business center and commercial lease space, operated 24 hours a day. Papesh represents without contradiction that her responsibilities included servicing the business at any hour needed.[6] It would not be not surprising if she received after-hour phone calls from her supervisors, and Papesh's voluminous phone records indicate she did.[7] Papesh has

---

[5] D.Ex.B8.

[6] P.Ex. 3.

[7] P.Ex. 1. Defendants object to the voluminous phone records and the chart matching phone calls with time records because the response brief does not cite the record with sufficient particularity to help the court, and the chart is illegible and not in a helpful format. Defendants also argue that Papesh's affidavit contradicts her deposition testimony. *See* Dkt. 27 at 4. These objections are overruled.

reviewed the phone records to identify specific instances when she received a call from a manager, but the time is not entered on her timesheets.[8] Papesh contends that this evidence "unequivocally show[s] that Defendants' upper level managers knew Plaintiff was performing work 'off the clock' and was not being compensated overtime for those hours."[9]

There is no dispute that Papesh was paid for some overtime hours she worked during the relevant time period. It is Papesh's contention that while she was paid overtime for some hours over forty that she worked in the course of a regular business day, she was told by her managers that she was not allowed to clock in and be paid overtime when she was required to work "on call" at night and early morning. For the time period April 22, 2013 through May 16, 2015, Papesh's timesheets show only two instances when Papesh clocked back in after having clocked out for the day. On October 16, 2014, Papesh clocked out at 5:23 p.m., and then clocked back in at 9:00 p.m. and out again at 11:00 p.m.[10] On March 23, 2015, Papesh clocked out at 6:04 p.m., then clocked back in from 8:02 p.m. until 9:02 p.m.[11]

---

[8] P.Ex. 2; P.Ex. 3. Defendants have not pointed out any discrepancy in this representation.

[9] Dkt. 24 at 5.

[10] D.Ex.B8 at 20 (Dkt. 21-4 at 94).

[11] *Id.* at 26 (Dkt. 21-4 at 100).

Papesh has presented sufficient evidence to create a genuine issue of fact as to whether she worked overtime hours for which she was not paid.[12] The next question becomes whether her employer was aware of it.

Defendants point out that Papesh had a history of inaccurate timekeeping.[13] She often requested corrections in her time records, including requests to add missing time, and was never denied the requested hours. In fact, one such instance occurred on October 16, 2014.[14] Papesh concedes that she never complained to Diane Taylor (the owner of MIM) or Insperity Human Resource Specialist Theresa Guy-Tippie that she was forced to work "off the clock."[15] And it is true that the employee handbook does state that working off the clock is against company policy.[16]

On the other hand, Papesh's affidavit says that Eddie Johnson and Tom Maxfield, two of her supervisors, told her within 30 days of being hired that she was

---

[12] The court also concludes that there is a fact issue as to whether the number of unpaid overtime hours worked is *de minimis*. In her deposition, Papesh estimated she worked 4 unpaid "on call" hours per week. D.Ex.A at 70, 92.

[13] D.Exs.B17, 27, 28, 29.

[14] *See* Dkt. 21 at 12; D.Ex.B23.

[15] D.Ex. A at 38, 52-53, 68-69, 70, 93, 102. Papesh was aware that Theresa Guy-Tippie was her Insperity human resource specialist. *Id.* at 42.

[16] *See* D.Ex. A at 22-23; D.Ex.B2, 10, 14, 15.

not allowed to report her overtime.[17] Johnson and Maxfield, along with another supervisor, Josh Springer, were responsible for several late night phone calls to Papesh. The evidence indicates that Johnson monitored Papesh's timekeeping and thus had reason to know that she was not accurately reporting her time.[18] Papesh also says that she discussed working off the clock with Maxfield when he came to town for business lunches.[19] While she did not report working off the clock to the HR Specialist or the owner of the company, she allegedly did tell Anne Sullivan, who was responsible for verifying payroll, that she did not like working "off the clock," but Sullivan was not concerned.[20] Because of these communications from her superiors, Papesh worried that if she reported more overtime or complained to the owner of the company, she would lose her job.[21]

If Papesh's testimony is credible, a reasonable jury could infer that her employer encouraged her to work overtime hours without reporting it. *Cf. Newton*, 47 F.3d at 747 ("Newton's payroll forms would not be reliable indicators of the

---

[17] P.Ex. 3. This is not directly contradictory of her deposition testimony. Although at deposition she could not recall precise instances, she was consistent in her position that Johnson and Masfield both gave this instruction. *See, e.g.,* D.Ex.A at 43-44, 85, 92-93.

[18] D.Ex.B17, 18

[19] D.Ex. A at 41.

[20] P.Ex. 3.

[21] *Id.*

8

number of hours worked, if there was evidence to support the conclusion that the City encouraged or forced Newton to submit incorrect time sheets.").

Given these disputed fact issues, the court denies defendants' motion for summary judgment on Papesh's overtime claim.

### B. Papesh's joint employer claim [22]

In cases where a plaintiff allegedly has more than one employer, this court "must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test." *Gray v Powers*, 673 F.3d 352, 354 (5th Cir. 2012). The four parts of the economic reality test are whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Id.* at 355 (citing *Williams v. Henagan,* 595 F.3d 610, 620 (5th Cir.2010)). The ultimate

---

[22] 29 C.F.R. § 791.2 (1991) provides:

> (a) A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938, since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer. A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case.

9

determination that a person or entity is an employer under the FLSA is a finding of law. *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir.1985).

Papesh's joint employer claim is based solely on the undisputed fact that "MS Sub was the owner of the storage and business rental facility at which she worked." Dkt. 24 at 5. However, the Property Management Agreement between MIM and MS Sub provides that MIM is responsible for hiring employees and "[a]ll matters pertaining to the employment, supervision, compensation, promotion, and discharge of such employees are the responsibility of [MIM], who is and shall remain, in all respects, the employer of such employees." Dkt. 21-4 at 215. Papesh has presented no evidence that MS Sub and MIM ignored this contract provision or that MS Sub otherwise meets the economic reality test. Defendants' motion for summary judgment as to MS Sub is granted.

**Conclusion and Order**

For the reasons set forth above, defendants' motion for summary judgment (Dkt. 21) is denied. This case is set for a jury trial beginning on July 24, 2017.

Signed at Houston, Texas on June 5, 2017.

*Stephen Wm Smith*
Stephen Wm Smith
United States Magistrate Judge